FILED
2008 Sep-17 PM 02:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| SANDRA P. BRINKLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | CIVIL ACTION NO. 07-G-1459-NE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, Sandra P. Brinkley, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether she has a severe impairment;

(3)   whether her impairment meets or equals one listed by the Secretary;

(4)   whether the claimant can perform her past work; and

> (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ Earl C. Cates, Jr., determined the plaintiff met the first two tests, but concluded that while she has an impairment or combination of impairments considered "severe," she did not suffer from a listed impairment. In his decision, the ALJ found that the plaintiff has the residual functional capacity to perform a limited range of sedentary work. [R. 30]. Accordingly, the ALJ found the Plaintiff not to be disabled.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be

given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, she must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

# FIBROMYALGIA

Fibromyalgia presents unique problems in the context of Social Security cases. These problems have been recognized by the courts. In <u>Sarchet v. Chater</u>, 78 F.3d 305 (7th Cir. 1996), Chief Judge Posner examined fibromyalgia in detail:

> [F]ibromyalgia, also known as fibrositis—a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. <u>See</u> Frederick Wolfe et al., "The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee," 33 <u>Arthritis & Rheumatism</u> 160 (1990); Lawrence M. Tierney, Jr., Stephen J. McPhee & Maxine A. Papadakis, <u>Current Medical Diagnosis & Treatment 1995</u> 708-09 (1995). Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch. There is no serious doubt that Sarchet [the plaintiff] is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 <u>British Med.J.</u> 386 (1995); <u>Preston v. Secretary of Health & Human Services</u>, 854 F.2d 815, 818 (6th Cir.1988) (per curiam), but most do not and the question is whether Sarchet is one of the minority.

78 F.3d at 306-307. Other courts have also recognized that fibromyalgia can be disabling. <u>Kelly v. Callahan</u>, 133 F.3d 583, 589 (8th Cir. 1998)("Fibromyalgia, which is

6

pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling.").

In spite of its elusive nature, the presence of fibromyalgia can be objectively verified in some cases. As noted in Sarchet, there are tender areas, or "trigger points," which are well defined and cause pain upon palpation. Objective, clinical support for a diagnosis of fibromyalgia may also be present if injections of pain medication to the trigger points are prescribed. Kelly at 589 (diagnosis of fibromyalgia is clinically supported by trigger point injections). Clearly, then, fibromyalgia if properly diagnosed satisfies the pain standard.

## DISCUSSION

In his decision, the ALJ found that the plaintiff suffered from the severe impairments of "early degenerative disc disease of the lumbar spine, lumbar radiculopathy, fibromyalgia, headaches, and depression . . . ." [R. 29]. However, he found that the plaintiff's impairments "do not meet or medically equal one of the listed impairments. . . ." [Id.]. The plaintiff was 35 years old at the time of the ALJ hearing. [R. 354]. She first sought treatment in January 2003 from her primary care physician, W. S. Pennington, M.D., for lower abdominal pain and lumbar back pain. [R. 175A-175]. From January, 2003, through October, 2003, she was treated by numerous primary care physicians or specialists for pain.[1] Dr. Morgan referred the plaintiff to R. Macon Phillips,

---

[1] Oliver Carlotta, M.D. (OB/GYN), [R. 178-183]; Kenny Eldred, D.C. (chiropractor) [R. 189-190]; Max Boone, M.D. (primary care), [R. 226-228]; Larry
(continued...)

Jr., M.D., of Rheumatology Associates of North Alabama, P.C.  After examination and testing, Dr. Phillips stated:

> I am unable to identify a definite cause for this back pain.  We could give consideration to the possibility of polymyalgia rheumatica, but this seems unlikely at her age, and with the fairly localized pain in the low back.

[R. 236].  However, on January 27, 2004, Dr. Phillips stated:

> The patient is in today for reassessment.  She continues to have pain and stiffness, <u>but the pattern continues to suggest fibromyalgia</u>. She has been evaluated for her headaches by two neurologists, Drs. Morgan and McDaris.  I do not yet have Dr. McDaris' report.  The only finding is the elevated sed rate, which of course does raise considerable concern.  Physical examination today is essentially normal.  I do not see any papilledema, neurological exam is intact.  <u>Trigger points are present in virtually all the usual locations</u>, but there is no paraspinal spasm or inflammatory synovitis.

[R. 266](emphasis added).

Also on November 17, 2004, Dr. Phillips completed a Fibromyalgia Residual Functional Capacity Questionnaire, in which he stated that the plaintiff meets the American College of Rheumatology criteria for fibromyalgia.[2]  [R. 316-319].  Dr. Phillips opined that the plaintiff's experience of pain or other symptoms would constantly

---

[1] (...continued)
Parker, M.D. (orthopod) [R. 185-186]; and George Morgan, M.D., Ph.D. (neurologist) [R. 191-193].

[2] Dr. Phillips indicated he clinically found "trigger points" which showed the plaintiff's medical impairments, which included multiple tenter points, numbness and tingling, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, anxiety, frequent and severe headaches, and depression.  [R. 316].

interfere with attention and concentration needed by the plaintiff to perform simple work tasks. [R. 318]. His opinion was that the plaintiff could tolerate low work stress. [Id.]. In response to the question of whether the plaintiff's impairments are reasonably consistent with the symptoms and functional limitations described in his evaluation, Dr. Phillips responded that the plaintiff presented "in a wheelchair at her May 04 office visit for no apparent valid reason." [R. 317]. The ALJ bases his finding that the plaintiff is not totally credible as regards her fibromyalgia pain because of her occasional use of a wheelchair.[3]  This credibility finding is not based on substantial evidence, and does nothing to invalidate the opinion of Dr. Phillips, who found that the plaintiff meets the American College of Rheumatology criteria for fribromyalgia, based on clinical findings of multiple trigger points. Because the ALJ failed to refute Dr. Phillips's testimony regarding the plaintiff's fibromyalgia pain, as a matter of law that testimony must be accepted as true.

---

[3]  Treatment notes from Dr. Boone show that the plaintiff had difficulty standing and felt more comfortable in a wheelchair at an August 4, 2003, examination. [R. 228]. On August 11, 2003, she was unable to get out of the wheelchair. [Id.]. Dr. Phillips's treatment note from May 28, 2004, states:

> Mrs. Brinkley is in the wheelchair today. She says that she uses this because she has difficulty walking long distances. . . . I encouraged Mrs. Brinkley to avoid wheelchair usage, because it will simply make her lower extremities weaker.

[R. 265]. There is no indication that the plaintiff had to rely upon the use of a wheelchair, or that she did so after Dr. Phillips's instruction that she avoid the wheelchair.

In making his credibility finding, the ALJ found that the plaintiff's daily activities were inconsistent with disabling pain. [R. 26]. The ALJ stated that the plaintiff "is able to drive short distances, grocery shop, attend church, does her laundry, and prepares meals for herself on a daily basis and for her family a couple of times a week." [Id.]. A summary of the plaintiff's testimony regarding her daily activities is as follows:

- She goes to bed about 9 p.m. and gets up at 10 a.m., after her children have left for school and her husband has left for work. [R. 369].

- She prepares simple meals for herself during the day, and evening meals for her family once or twice a week. Otherwise, she depends on her husband for meals. [R. 371-372].

- During the day, she reads and watches television. She does her own laundry once a week, but her children do their own laundry, wash dishes and clean the house. [R. 372-375].

- She attends church once a week for an hour. [R. 372].

- Her children assist her with the grocery shopping once a month, although she uses a motorized cart at the store. [R. 374].

- She cares for her personal hygiene, but uses a shower chair and sits to dress. [R. 375].

The activities of daily living as recited by the ALJ, and as testified to by the plaintiff, do not support a finding that the plaintiff's pain testimony is not true. The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain.

10

The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability.  Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997).  As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee.  Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days.  <u>Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity</u>. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added).  It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances.  In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974).  What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world.  Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989).  The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ."  867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of Hale. The conclusion of that court is equally appropriate in the instant case. "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

Under this circuit's pain standard, objective proof of the pain itself is not required. Moreover, the medical evidence also shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations. See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."). As Judge Allgood observed in Lamb v. Bowen: "[T]he record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain. No examining physician ever questioned the existence of appellant's pain. They simply found themselves unable to cure the pain." 847 F.2d 698 (11th Cir. 1988).

On October 31, 2004, one of the plaintiff's treating physicians, Mark Murphy, M.D., a specialist in pain management, completed Physical Residual Functional

12

Capacity Questionnaire. [R. 306-309]. His opinion was that the plaintiff was not malingering. [R. 307]. Dr. Murphy stated that the plaintiff could sit for two hours in an eight-hour workday, and stand or walk for less than two hours in an eight-hour workday. [R. 308]. Dr. Murphy estimated that the plaintiff would likely be absent from work more than four days a month because of her impairments or treatment. [R. 309]. ALJ Cates rejected Dr. Murphy's opinion:

> The undersigned does not accept that the claimant is limited to sitting only two hours or an 8 hour day as reported by Dr. Murphy and also does not accept that she would miss more than four days a month due to her physical condition.

[R. 27]. The ALJ's reason for rejecting Dr. Murphy's opinion was that "[e]ven though Dr. Murphey [sic] reported the claimant had persistent low back pain, there were only minimal findings on her MRI and her prognosis was reported to be good due to this." [R. 27]. However, Dr. Murphy is a pain specialist; Dr. Phillips is a rheumatologist, and Dr. Phillips found that the plaintiff meets the objective criteria for fribromyalgia, based on clinical findings of multiple trigger points. Dr. Murphy's opinion regarding the plaintiff's pain need not be based on objective MRI findings and a good prognosis. His opinion regarding the plaintiff's ability to sit, stand and walk for less than an eight-hour workday is entirely consistent with Dr. Phillips's opinion. Therefore, the ALJ's reasons for rejecting Dr. Murphy's opinion are not supported by substantial evidence; therefore, Dr. Murphy's assessment must be taken as true.

## CONCLUSION

The Vocational Expert testified that absenteeism of more than one day per month, for any reason, including medical treatments, would not be tolerated, and would preclude any work.  Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 17 September 2008.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.